IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES ANTHONY GRIVET,<br>      Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. 1:16-CV-129-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss filed by the Government. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## LITIGATION BACKGROUND

In his § 2255 petition, Petitioner Grivet argues that his counsel was ineffective for failing to introduce expert testimony at his sentencing concerning his mental impairments. Expert testimony, he argues, would have persuaded the Court to impose a lighter sentence. Grivet requests an evidentiary hearing to introduce such testimony.

Grivet's underlying crime was methamphetamine distribution. At his arraignment, he was released pending trial on the condition he submit to location monitoring. While on release Grivet cut off his electronic monitoring device and sold heroin to an undercover officer. He was arrested and jailed, but just four days later, law enforcement officials intercepted several telephone calls by Grivet from the jail directing others to sell drugs and transfer money. *See Government's Exhibit 1 (Dkt. No. 57-1) in U.S. v. Grivet,*

**Memorandum Decision & Order – page 1**

*1:14-cr-114-BLW.* In one of those calls, Grivet spoke to another individual in coded language telling the person to "get rid" of the "black" (heroin) and "white" (methamphetamine). *Id.* In later phone calls, Grivet again instructed, in coded language, the person to sell the drugs and put money on his books at jail. *Id.* Grivet also asked the person if he was interested in "collecting" some debts for Grivet. *Id.*

Grivet eventually pled guilty to one count of selling methamphetamine. Prior to sentencing, Grivet's counsel submitted documents detailing his military service and medical history regarding his mental impairments. *See Exhibits (Dkt. No. 43) in U.S. v. Grivet, 1:14-cr-114-BLW.* Grivet had been diagnosed with Post Traumatic Stress Disorder (PTSD) brought on by his extensive military experience and a serious head injury suffered during a motorcycle accident. The record also included a Neuropsychological Evaluation from Dr. Clay Ward, a psychologist. *See Exhibit C (Dkt. No. 43-3).* The report concludes, after extensive testing, that Grivet suffers from a "Mild Neurocognitive Disorder with behavioral disturbance" and that he will be prone to "impulsive behavior that will result in activities that are self-destructive." *Id.*

The Guidelines set his offense level at 34 and his criminal history category at III, establishing a range of 188 to 235 months. Grivet's original counsel sought a sentence of 120 months, but Grivet's new counsel who represented him at the sentencing hearing lowered that request to 96 months. The Court was troubled by Grivet's post-release conduct, but found that the Guideline calculation already "punished" him for that conduct by taking away 3 points for acceptance of responsibility and adding 2 points for obstruction of justice. *See Transcript (Dkt. No. 65) in U.S. v. Grivet 1:14-cr-114-BLW* at

**Memorandum Decision & Order – page 2**

40-45. That swing added some 60 months to the Guideline calculation. *Id.* To refuse a below-Guidelines sentence, the Court found, would be to "double punish" the defendant for this conduct, an option the Court rejected. *Id.* Instead, the Court dropped below the lowest Guideline range of 188 months to sentence Grivet to 144 months. *Id.*

Grivet has filed a § 2255 motion arguing that his counsel was ineffective for failing to have Dr. Ward and others testify at his sentencing to explain why his PTSD and brain injury should result in a lower sentence. He asks for an evidentiary hearing to offer that testimony and have the Court reconsider its sentencing decision

## LEGAL STANDARDS

Rule 4(b) of the Rules governing § 2255 provide the court authority to dismiss a motion "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."

The test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984). In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id.* at 689. This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ." *Id.* In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

**Memorandum Decision & Order – page 3**

different. *Id.* at 694. Both prongs of the Strickland test must be met to demonstrate a valid claim of ineffective assistance of counsel.

## ANALYSIS

Grivet argues first, that his counsel failed to present sufficiently the mitigating circumstances that he suffered from PTSD and a traumatic brain injury. This argument is specious as counsel did raise that issue, arguing from the detailed medical records that Grivet was entitled to leniency for these afflictions.

Grivet argues next that his counsel was ineffective for failing to call Dr. Ward to testify about the effects of PTSD and traumatic brain injury. The Court disagrees. Prior to sentencing, the Court read Dr. Ward's detailed report of his examination of Grivet that concluded, as discussed above, that he had a "Mild Neurocognitive Disorder with behavioral disturbance" and that he will be prone to "impulsive behavior that will result in activities that are self-destructive." In addition, the Court had Grivet's military records that showed him being diagnosed with PTSD. The Court took all of that into account in sentencing Grivet to a term below the Guideline range.

Grivet points out, however, that the Court stated it would have been even more lenient except for Grivet's post release conduct. Dr. Ward, Grivet argues, would have explained – if allowed to testify – why Grivet should be excused for that conduct. Assuming Dr. Ward would so testify, it would have made no difference. While Grivet's afflictions led him to act impulsively and without self-control, the intercepted jailhouse telephone calls show him acting deliberately and in control while directing sales and transfers of drugs and money. *See Exhibit 1 (Dkt. No. 57-1).* Nothing Dr. Ward could

**Memorandum Decision & Order – page 4**

say could change the nature of those intercepted calls. Indeed, if Dr. Ward testified that Grivet should be excused for that conduct because his neurocognitive disorder was so serious or unusual, he would have to explain why his report only concludes that Grivet's disorder was "mild." *See Exhibit C (Dkt. No. 43-3).*

Grivet argues that at sentencing the Court itself explained why counsel's failure to call Dr. Ward was prejudicial. Grivet cites the following statement made by the Court after it remarked that it is "not at all unusual to have defendants who come before the court after having had some type of traumatic brain injury":

> But without some way to kind of quantify the impact that that has had upon the defendant and a way to determine whether or not that is present to an unusual degree and distinguishes this case from the typical case covered by the guidelines, I just don't think I can make that determination here.

*See Transcript, supra,* at 37. By this comment, the Court did not mean that Grivet's post-release conduct could have been explained away by expert testimony if it had just been presented; instead, the Court meant that Dr. Ward's report failed to explain why this was an unusual case that required special treatment beyond the reduction in sentence the Court was about to order. Indeed, as just discussed, no expert could explain away those telephone calls.

Given the complete lack of any basis for this § 2255 petition, the Court finds that further proceedings such as discovery and an evidentiary hearing or trial would serve no purpose. The Court will therefore grant the motion to dismiss.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases. A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack,* 529 U.S. at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El,* 537 U.S. at 336.

Here, the Court has denied Grivet's claims on the merits. The Court finds that briefing on the COA is not necessary. The Court concludes that reasonable jurists would not find debatable the Court's decision on the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If Grivet wishes to proceed to the United States Court of Appeals for the Ninth Circuit, he must file a notice of appeal in this Court within thirty (30) days after entry of

**Memorandum Decision & Order – page 6**

this Order, and he may file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b)(2).

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 6) is GRANTED.

IT IS FURTHER ORDERED, that the Court will issue a separate Judgment as required by Rule 58(a).

IT IS FURTHER ORDERED, that a certificate of appealability will not issue. If Grivet files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: April 27, 2017

B. Lynn Winmill
Chief Judge
United States District Court